1  BARRY J. PORTMAN
   Federal Public Defender
2  ERIC MATTHEW HAIRSTON
   Assistant Federal Public Defenders
3  450 Golden Gate Avenue
   San Francisco, CA  94102
4  Telephone:  (415) 436-7700

5  Counsel for Defendant DONEHUE

6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11

| | | |
|---|---|---|
| 12 | UNITED STATES OF AMERICA, ) | CR-07-0380 SI |
| | ) | |
| 13 | Plaintiff, ) | **AMENDED** NOTICE OF MOTION AND |
| | ) | MOTION TO DISMISS SECOND |
| 14 | v. ) | SUPERSEDING INDICTMENT, |
| | ) | MEMORANDUM OF POINTS AND |
| 15 | NINA L. DONEHUE, ) | AUTHORITIES IN SUPPORT THEREOF |
| | ) | |
| 16 | Defendant. ) | Court:  The Hon. Susan Illston |
| | ) | Date:   April 25, 2008 |
| 17 | | Time:   11:00 a.m. |

18

19      TO: UNITED STATES ATTORNEY, PLAINTIFF; AND JOSEPH RUSSONIELLO

20  UNITED STATES ATTORNEY, NORTHERN DISTRICT OF CALIFORNIA; ERIKA FRICK,

    ASSISTANT UNITED STATES ATTORNEY
21

22      PLEASE TAKE NOTE that on Friday, April 25, 2008, at 11:00 a.m., Ms. Nina Donehue will

23  move this Court pursuant to Federal Rules of Criminal Procedure 12(b)(2) and 12(b)(3)(B) to

24  dismiss the Second Superseding Indictment filed against her.  This motion is based on the

25  following memorandum of points and authority, the Federal Rules of Criminal Procedure, the

26  United States Constitution, all relevant legal authority and such argument as will be entertained

27  by the Court at the hearing on this matter.

    ///
28

AMENDED MOTION TO DISMISS SECOND SUPERSEDING INDICTMENT
CR 07-0380 SI

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

The Second Superseding Indictment filed against Nina Donehue purports to multiply the time period of criminal conduct previously alleged against her by a factor of 30.  The government reaches this result by three impermissible means:  erroneously alleging a continuing offense, joining two distinct courses of conduct in a single count, and seeking to prosecute Ms. Donehue for conduct that falls within the scope of neither 18 U.S.C. 666 nor any other recognizable federal criminal statute.  Ms. Donehue thus respectfully requests that this Court dismiss the Second Superseding Indictment and permit Ms. Donehue to proceed to trial on a legally sound theory of prosecution.

**BACKGROUND**

On June 14, 2007, Nina Donehue was charged in an indictment alleging that between January 20, 2006 and February 6, 2006 she knowingly embezzled, stole, obtained by fraud and converted funds belonging to the Northridge Cooperative Homes ("Northridge"), a federally-funded organization within the meaning of 18 U.S.C. 666(a)(1).  *See*, Indictment, attached as Exhibit A to the Declaration of Eric Matthew Hairston ("Hairston Declaration"), filed herewith.  The facts alleged are that Ms. Donehue, while an elected officer of Northridge's Board of Directors, made a series of withdrawals from an account linked to Northridge's general fund during the above-referenced sixteen day period.  The Indictment also included a forfeiture allegation demanding that Ms. Donehue disgorge upon conviction approximately $35,000, representing the proceeds of the alleged offense, and a Chrysler 300M, allegedly purchased with such proceeds.

The government filed a Superseding Indictment ("First Superseding Indictment") against Ms. Donehue on June 28, 2007.  The First Superseding Indictment did not materially alter the allegations against Ms. Donehue set forth above.  *See,* First Superseding Indictment, attached hereto as Exhibit B to the Hairston Declaration.

 On March 21, 2008, undersigned counsel received a letter from the government indicating that it intended to seek a Second Superseding Indictment on the theory that Ms. Donehue's possession of the above-referenced Chrysler through the June 28, 2007 date of the First

AMENDED MOTION TO DISMISS SECOND SUPERSEDING INDICTMENT
CR 07-0380 SI                                         2

1  Superseding Indictment constituted a continuing violation of federal law. *See*, letter dated March

2  21, 2008, attached as Exhibit C to the Hairston Declaration. The government filed the Second

3  Superseding Indictment against Ms. Donehue on March 27, 2008. *See,* Second Superseding

4  Indictment, attached hereto as Exhibit D to the Hairston Declaration. Count One of the Second

5  Superseding Indictment expands the scope of criminal conduct charged against Ms. Donehue to

6  encompass the full sixteen months between the time of her last alleged withdrawal from the

7  Northridge account and the filing of the First Superseding Indictment.

8      The Second Superseding Indictment is defective for three reasons. First, 18 U.S.C. 666 is not

9  a continuing offense under the analysis set forth by the U.S. Supreme Court in *Toussie v. United*

10  *States,* 397 U.S. 112 (1970). Second, the theory by which the government has expanded Count

11  One encompasses two distinct courses of conduct: (a) embezzling funds, and then (b) possessing

12  an item purchased with embezzled funds. Count One is thereby rendered duplicitous, with the

13  qualification that a traditionally duplicitous count would allege two separate crimes whereas

14  Count One instead alleges one crime and one non-crime. Finally, as noted, possession of an item

15  allegedly purchased with embezzled funds is neither a recognizable crime nor a justification for

16  expanding the scope of charged conduct in an Indictment.

17
### DISCUSSION

18
**I.  18 U.S.C. 666 IS NOT A CONTINUING OFFENSE**

19      A crime is complete as soon as every element in the crime occurs. *U.S. v. Drebin,* 557 F.2d

20  1316, 1333 (9th Cir. 1977). Financial crimes such as embezzlement and fraud, even when alleged

21  as an ongoing scheme, are generally complete once an individual obtains the funds that are the

22  target of his or her actions. *Kann v. United States*, 323 U.S. 88, 95 (1944). Subsequent conduct

23  is merely incidental and collateral to the alleged crime, rather than part of it. *Id*. See also,

24  *Carroll v. United States,* 326 F.2d 72, 86 (9th Cir. 1964). The one recognized exception to this

25  well-recognized premise is the continuing offense doctrine set forth in *Toussie v. United States*,

26  397 U.S. 112 (1970).

27      In *Toussie,* the defendant was convicted of violating a statute requiring all male citizens

28

AMENDED MOTION TO DISMISS SECOND SUPERSEDING INDICTMENT
CR 07-0380 SI                                         3

1  between ages 18 and 26 to register for military service within five days of his eighteenth

2  birthday. *Id.*, at 113. The defendant failed to register upon turning 18, but was not charged with

3  violating the statute until seven years later, at age 25. The defendant argued that the five-year

4  statute of limitations had run, as the offense was complete upon his failure to register within five

5  days of his eighteenth birthday. The government argued that the statute set forth a continuing

6  offense, such that the crime was ongoing as long as the defendant remained unregistered while

7  subject to the registration obligation. *Id.* The Supreme Court reversed the defendant's

8  conviction, holding that a particular crime constitutes a continuing offense only if: (1) the explicit

9  language of the substantive criminal statute compels such a conclusion, or (2) the nature of the

10  crime involved is such that Congress must assuredly have intended it to be treated as a

11  continuing one. *Id.*, at 115. See also, *United States v. W.R. Grace*, 429 F.Supp.2d 1207, 1240

12  (D. Montana 2006).

13      Undersigned counsel is unaware of any case applying the *Toussie* analysis to 18 U.S.C. 666.

14  In *United States v. Yashar,*166 F.3d 873 (7th Cir. 1999), the government conceded that § 666 was

15  not a continuing crime, and instead argued that *Toussie* was inapplicable in cases in which the

16  defendant engaged in a "continuing course" of affirmative conduct after the elements of the

17  offense were satisfied. The Seventh Circuit disagreed with the government and held that *Toussie*

18  did in fact apply. *Yashar,* however, is not particularly instructive given the distinguishable facts

19  between that case and the case before the Court and the government's concession in that case that

20  § 666 was not in fact a continuing crime.

21      Far more instructive is the District of Arizona's recent consideration in *United States v.*

22  *Pease*, 2008 WL 808683 (March 24, 2008) of whether the first paragraph of 18 U.S.C. 641

23  constituted a continuing offense under *Toussie.* The first paragraph of § 666, under which Ms.

24  Donehue is charged, is a near-parallel to the first paragraph of § 641, which holds criminally

25  liable anyone who "embezzles, steals, purloins or converts" the property of a federal agency or

26  department. Indeed, the Ninth Circuit has observed that § 666 was enacted specifically to fill a

27  gap revealed in § 641 whereby "theft of money distributed under federal programs could not be

28  prosecuted if title to the funds had either passed to another entity or become so commingled with

AMENDED MOTION TO DISMISS SECOND SUPERSEDING INDICTMENT
CR 07-0380 SI                                    4

1   other assets" that the federal character of the funds could no longer be shown.  *United States v.*

2   *Wyncoop*, 11 F.3d 119, 122 (9ᵗʰ Cir. 1993).

3       In *Pease*, the court applied the first part of the *Toussie* test by looking at the language of §

4   641 to determine whether Congress intended the crime of conversion set forth therein to be a

5   continuing offense.  2008 WL 808683, at *2.  The court noted Congress has made clear in other

6   statutes that particular crimes are to be viewed as continuing, such as the clear statement that

7   concealment of assets of a debtor "shall be deemed a continuing offense" under 18 U.S.C. 3284.

8   The court found no such language suggesting that Congress intended for § 641 to create a

9   continuing offense.  *Id.*

10      Turning to the second part of the *Toussie* analysis, the court looked to the nature of the

11  offense codified in § 641 - conversion - to determine whether the offense is of such a nature that

12  Congress "must assuredly" have intended it to be treated as continuing.  The court observed that

13  classic examples of continuing offenses are those such as conspiracy, escape, kidnaping, bigamy

14  and crimes of possession, which once committed continue until affirmatively ended.  *Id.*, citing

15  *W.R. Grace*, 429 F.Supp.2d at 1240, *United States v. Rivlin*, 2007 WL 4276712, at *2 (S.D.N.Y.

16  Dec. 5, 2007).  The court held that conversion under U.S.C. 641 does not by nature continue after

17  the elements of the offense are met, and is thus not a continuing crime under the second part of

18  the *Toussie* analysis.  *Id.*, citing *United States v. Beard*, 713 F.Supp. 285, 291 (S.D.Ind. 1989).

19      Indeed, the full language of the District of Arizona's selection from *Beard* is particularly

20  relevant to the case before the Court: "[t]he fundamental flaw with the government's argument is

21  that the retention of the converted property is not in any way an element or part of the crime of

22  conversion.  Conversion is simply the wrongful assumption and exercise of control over

23  another's property.  *See*, Black's Law Dictionary, 402 (4ᵗʰ ed. 1968) (citing authority).  What the

24  converter intends to do (or in fact does) with the converted property is irrelevant: the act of

25  'conversion' is completed upon the initial interference with the owners interest."  713 F. Supp.

26  291.

27      The theory by which the government has expanded the scope of criminal conduct alleged

28  against Nina Donehue bears this same fundamental flaw.  The crime of embezzlement, theft

1    and/or conversion with which Ms. Donehue is charged was without question complete after her

2    final alleged withdrawal of funds from the Northridge account.  Her subsequent possession of an

3    automobile purchased with such funds is neither a component nor a continuation of the crime

4    with which she is charged, and thus cannot form a proper basis for expansion of the scope of

5    conduct alleged against her in Count One of the Second Superseding Indictment.

6        Undersigned counsel notes that *Toussie* and the line of cases applying the *Toussie* analysis

7    are concerned almost exclusively with the question of whether a defendant's conduct falls within

8    the applicable statute of limitations.  As all conduct alleged against Ms. Donehue appears to fall

9    within the statute of limitations, no such concern presents itself in the case before the Court.

10   However, the government's attempt to expand the scope of Count One raises another well-

11   recognized concern, as the Second Superseding Indictment essentially charges Ms. Donehue with

12   two distinct courses of conduct set forth in the same count.

13

14   **II.  COUNT ONE OF THE SECOND SUPERSEDING INDICTMENT IS DUPLICITOUS
         AND SHOULD BE DISMISSED**

15

16       ***A.  The Government's Expanded Theory Alleges Two Distinct Courses of Conduct***

17       In *United States v. Aguilar*, 756 F.2d 1418 (9th Cir. 1985), the Ninth Circuit discussed the

     indictment defect of "duplicity" and articulated the myriad ways in which a duplicitous count
18
     undermines the rights of a defendant:
19
         The joining in a single count of two or more distinct offenses is termed "duplicity."
20       *See generally* 1 Wright, Federal Practice and Procedure § 142 (2nd ed. 1982);
         8 Moore's Federal Practice § 8.03 (2nd ed. 1984).  The vices of duplicity arise
21       from breaches of the defendant's Sixth Amendment right to knowledge of the
         charges against him, since conviction on a duplicitous count could be obtained
22       without a unanimous verdict as to each of the offenses contained in the count.
         See *United Stats v. UCO Oil company*, 546 F.2d 833, 835 (9th Cir. 1976).
23       A duplicitous indictment also could eviscerate the defendant's Fifth Amendment
         protection against double jeopardy, because of a lack of clarity concerning the
24       offense for which he is charged or convited.  See id., *Abney v. United States*, 431 U.S.
         651, 654 (1977).  *Id*, at 1420.
25
         Of particular concern in the matter before the Court is the danger that the government's
26
     expansion of Count One to include incidental, non-criminal conduct may lead to Ms. Donehue's
27
     conviction by a jury without a unanimous verdict on the actual crime with which she is charged.
28
         As set forth above, the Second Superseding Indictment expands the scope of conduct alleged

1  against Ms. Donehue in Count One from sixteen days to sixteen months, ostensibly on the

2  premise that embezzlement, theft and/or conversion under 18 U.S.C. 666 is an offense that

3  continues perpetually until indictment.  Based upon the government's written representations to

4  undersigned counsel, it appears that the specific continuing conduct the government seeks to

5  address with the newly-expanded Count One involves Ms. Donehue's continued possession

6  during the relevant time period of a Chrysler automobile purchased with the proceeds of her

7  alleged embezzlement.  *See*, Exhibit C to Hairston Declaration.  Count One thus encompasses

8  two distinct courses of action: (1) sixteen days of alleged embezzlement, theft or conversion of

9  Northridge's funds, and (2) sixteen months of possessing an item purchased with allegedly

10  embezzled funds.

11

12  ### B. The Government's Expanded Theory Creates a Risk of Conviction For Non-Criminal Conduct

13  The danger of a non-unanimous verdict presented by Count One is particularly acute because

14  Ms. Donehue's possession of a Chrysler is neither a component of the crime with which she is

15  charged nor itself any recognizable stand-alone crime.  One can readily imagine any number of

16  increasingly problematic scenarios that may arise if Count One were presented to jurors under the

17  government's current theory:

18  ● Guilty, with eleven jurors convicting Ms. Donehue for the crime of embezzling funds, the

19  twelfth for the non-crime of owning a Chrysler.

20  ● Guilty, with six jurors embracing the government's theory that she knowingly embezzled

21  funds, six embracing the government's theory that her failure to convey the Chrysler to

22  Northridge is somehow itself a criminal act.  Or most troublesome,

23  ● Guilty, with not a single juror believing that Ms. Donehue knowingly embezzled funds,

24  but all twelve opting instead to punish her for two years of owning a car that she has not paid for.

25  In addition to the serious concern of a non-unanimous verdict, the duplicitous charge set forth

26  in Count One will generate significant problems involving the admissibility of evidence at trial.

27  If permitted to proceed on its current theory, the government will presumably present testimony

28  establishing Ms. Donehue's purchase and possession of a Chrysler throughout the sixteen

7

1   additional months alleged in Count One.  This evidence, while perhaps highly probative of

2   whether Ms. Donehue in fact purchased and possessed a Chrysler, bears almost no relevance to

3   the jury's determination as to whether Ms. Donehue knowingly embezzled funds from the

4   Northridge account over a two-week period in early 2006.  Further, testimony regarding sixteen

5   months of conduct subsequent to Ms. Donehue's last alleged act of embezzlement from the

6   Northridge account would seem to fall squarely within the logic of Federal Rule of Evidence 403.

7        If Count One were appropriately limited to the original two-week period during which Ms.

8   Donehue allegedly made withdrawals from the Northridge account, the government would of

9   course seek to introduce evidence of her purchase and possession of a car as somehow probative

10  of whether she knowingly embezzled the funds with which the car was purchased.  Counsel for

11  Ms. Donehue would vigorously oppose such an attempt, and the matter would likely be the

12  subject of motions in limine filed by one or both parties in advance of trial.  Regardless of the

13  outcome of such motions, it is clear that allegations relating to sixteen months of non-criminal

14  conduct occurring subsequent to Ms. Donehue's final alleged act of embezzlement have no place

15  in a substantive count filed against her.

16                                    **CONCLUSION**

17       For the foregoing reasons, Ms. Nina Donehue respectfully requests that this Court dismiss the

18  Second Superseding Indictment filed against her.

19

20   DATED: April 14, 2008                          ____/s/_____
                                                    ERIC MATTHEW HAIRSTON
21                                                  Attorney for Defendant

22

23

24

25

26

27

28