JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CASBN 163973)
Chief, Criminal Division

ERIKA R. FRICK (CSBN 208150)
JONATHAN D. SCHMIDT (CSBN 230646)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-6973
   Facsimile: (415) 436-7234
   Email:  erika.frick@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 07-0380 SI |
|    Plaintiff, ) | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS SECOND SUPERSEDING INDICTMENT |
|    v. ) | |
| NINA L. DONEHUE, ) | Date:       April 25, 2008 |
|    Defendant. ) | Time:       11:00 a.m. |
| ) | Courtroom:  Honorable Susan Illston |

     Defendant Nina L. Donehue moves to dismiss the second superseding indictment on the grounds that Count One, which charges the defendant with embezzling funds from a federally funded government agency, erroneously alleges a continuing offense and is duplicitous. Those arguments should be rejected. First, as defendants concede, a "continuing offense" is a "term of art" in the statute of limitations context, and there is no statute of limitations issue in this case. In any event, a violation of 18 U.S.C. § 666 can be, and in this case is, a continuing offense. Second, the indictment is not duplicitous. Federal Rule of Criminal Procedure 7(c)(1) and established case law provide that a single count may encompass multiple theories of conviction. Any possibility that the jury might convict on a non-unanimous basis is easily handled in this

RESPONSE TO MOTION TO DISMISS
CR 07-0380 SI

case by a clear unanimity instruction. Accordingly, the motion should be denied.

## I. BACKGROUND

### A.     The Offense Conduct

The government expects to prove the following facts at trial:

The defendant, Nina L. Donehue, was a resident of the Northridge Housing Cooperative ("Northridge"), which is a housing cooperative for low-income people that is funded by the U.S. Department of Housing & Urban Development ("HUD") and that is located in the Bayview area of San Francisco. In or about 2004, the defendant was elected to the Northridge Board of Directors and held a position of Secretary. Because of her elected position, Ms. Donehue, like several other management and board members, was entrusted with signatory authority over the Northridge's operating account at the Wells Fargo Bank. As Ms. Donehue well knew, the Northridge had an established procedure for paying bills that required each check written from the Northridge account to be supported by receipts or other documentation and signed by three different authorized officials. None of the Northridge officers or board members was authorized to have or did have a credit card or debit card from the Northridge bank account, and none of the officers or board members was authorized to spend Northridge funds for personal use.

On or about December 19, 2005, Donehue opened an individual checking account with the Wells Fargo Bank, Bayview Office, in San Francisco. The Wells Fargo employee who assisted Donehue was Sylvia Choy. Choy authorized the issuance of two bank cards for Donehue during that transaction: one from Donehue's individual account and one from a Northridge business account. From January 20 to February 6, 2006, Ms. Donehue proceeded to incur a series of unauthorized ATM cash withdrawals and debits on the Northridge account. The total amount of unauthorized disbursements was approximately $35,000. Among other things, Ms. Donehue received two cashiers checks from the Northridge account, one for $10,000 and one for $20,000, and she used those cashiers checks to purchase a new 2006 Chrysler 300M automobile from Barber Auto Sales in Vallejo, California.

On or about February 6, 2006, Northridge discovered through a review of its bank statements that the unauthorized purchases had occurred. Northridge Administrator Dwenda

1  ("Penny") Hall went to Wells Fargo Bank and inquired about the disbursements. Hall learned that
2  Donehue had received a bank card and that she was misappropriating Northridge funds. After
3  immediately canceling Donehue's access to the Northridge account, Northridge (through Hall) filed
4  a police report with the San Francisco Police Department.

5  On or about February 8, 2006, at an emergency Board meeting, the Board members
6  confronted Donehue about the transactions. Donehue claimed that the Wells Fargo Bank had loaned
7  her the monies to buy the car and that she was not aware that the funds actually came from
8  Northridge. Donehue claimed that the bank had given her "credit" and that she thought she would
9  pay it back. After the meeting, several participants from the Board meeting went to Ms. Donehue's
10 residence to request that she return the automobile to Northridge. Ms. Donehue advised the Board
11 members that she had spoken to an attorney and that the attorney had advised her not to return the
12 car to the cooperative. As of the date of this filing, Ms. Donehue has not returned the car or any of
13 the other property to Northridge and continues to use the automobile for her personal benefit.

14   **B.   Procedural History**

15  On June 14, 2007, the grand jury returned an indictment charging that between January 20
16 and February 6, 2006, Ms. Donehue knowingly embezzled, stole, obtained by fraud and converted
17 funds belonging to the Northridge, which is a federally funded organization, in violation of 18
18 U.S.C. § 666(a)(1). On June 28, 2007 the government filed its first superseding indictment, which
19 did not materially alter the allegations against Ms. Donehue.

20  On March 21, 2008, the government advised the defendant through counsel that her
21 continued retention of the automobile purchased with Northridge funds constituted a continuing
22 violation of law. The government requested that the automobile be returned to the Northridge
23 immediately.

24  On March 27, 2008, the government filed its second superseding indictment, which charges
25 that, between on or about January 20, 2006 until on or about June 28, 2007, Ms. Donehue
26 knowingly embezzled, stole, and obtained by fraud, and without authority knowingly converted to
27 the use of any person other than the rightful owner and intentionally misapplied property belonging
28 to the Northridge, in violation of 18 U.S.C. § 666(a)(1).

RESPONSE TO MOTION TO DISMISS
CR 07-0380 SI                                          3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RESPONSE TO MOTION TO DISMISS
CR 07-0380 SI                    4

**II. DISCUSSION**

**A.    Statute of Limitations Case Law is Inapplicable Here, and In Any Event, A Violation of Section 666 Can Be, and in this Case Is, a Continuing Offense.**

Defendant argues that Section 666 is not a continuing offense. The term "continuing offense" is a "term of art" that applies only to legal questions regarding the application of the statute of limitations. *See United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999). It is unclear what relief defendant seeks in this regard, since defendant concedes that there is no statute of limitations defense at issue here. Presumably, the defendant objects to the timeframe alleged in the second superseding indictment. Whether the charged offense occurred at a particular date is a factual question to be answered by the jury at trial.

In any event, it is the government's position that Section 666 can be, and in this case is, an ongoing offense. Under *Toussie v. United States*, 397 U.S. 112 (1970), criminal activity may be treated as a continuing offense even for statute of limitations purposes when a criminal statute explicitly so provides, or when "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* at 115. Here, at least three of the theories under which the government is proceeding – specifically, embezzlement, conversion, and misapplication – may constitute a "continuing offense" in the context of the facts of this case.[1]

Embezzlement "includes 'the fraudulent appropriation of property' – e.g., 'the deliberate taking or retaining of the ... property of another with the intent to deprive the owner of its use or benefit' – 'by a person ... into whose hands it has lawfully come.'" *United States v. Smith*, 373 F.3d 561, 564 (4th Cir. 2004). In *Smith*, the Fourth Circuit found, in the context of 18 U.S.C. § 641, that embezzlement could "in some circumstances, ... be treated ... as a continuing offense." *Id.* at 564. The Fourth Circuit did not elaborate. It appears that the court of appeals found embezzlement to be

---

[1] Neither the Ninth Circuit Model Criminal Jury Instructions nor Ninth Circuit case law provides much guidance as to the various theories of criminal liability under Section 666. The government therefore relies on case law from other circuits and on the Eighth Circuit's Model Jury Instructions, which can be found at http://www.juryinstructions.ca8.uscourts.gov/crim_manual_2008_expanded.wpd, and which illuminate the scope of Section 666.

RESPONSE TO MOTION TO DISMISS
CR 07-0380 SI                                             5

a continuing offense because it encompasses the *retention* of property. The present case also gives rise to a continuing offense because, as of the date of this filing, Ms. Donehue still retains possession of the automobile that she purchased with Northridge Cooperative funds to the Northridge Cooperative – despite multiple requests that she return the car to its rightful owner.

Conversion also involves continual possession. Conversion "means the deliberate taking or retaining of the money or property of another with the intent to deprive the owner of its use or benefit either temporarily or permanently" and "includes the misuse or abuse of property as well as use in an unauthorized manner or to an unauthorized extent." Eighth Circuit Model Criminal Jury Instructions, Final Instructions: Elements of Offenses, § 6.18.666A, page 190. Because conversion includes retention, misuse, or abuse of illicitly obtained property, it also may constitute a continuing offense. Here, where defendant continues to retain, misuse, and abuse the illegally obtained automobile, there is a continuing offense.

Finally, a third theory of conviction – misapplication – means to use the funds or property of the property owner knowing that such use is unauthorized, or unjustifiable or wrongful, and includes the wrongful taking or use of the money or property of the property owner by its agent for her own benefit, the benefit of another, or for an unauthorized purpose, even if such use benefitted the property owner. *See id.* When misapplication involves the "use" of funds, it is a continuing offense. Here, Ms. Donehue's continued unauthorized use for her own benefit of the automobile that she purchased with Northridge Cooperative funds constitutes a continuing offense.

The fact that the defendant's retention or misuse of the ill-gotten property creates a continuing offense is underscored by *United States v. Fleetwood*, 489 F. Supp. 129 (D. Or. 1980). *Fleetwood* involved an indictment charging the defendant with concealing and retaining stolen United States Savings Bonds and Freedom Share Notes, in violation of 18 U.S.C. § 641's prohibition on "receiv[ing], conceal[ing], or retain[ing]" government property "with intent to convert it to his use or gain." 489 F. Supp. at 130 & n.1. The district court found that to be a continuing offense because the essence of the offense was possession. Similarly here, as noted above, the jury is permitted to convict Ms. Donehue of embezzlement or conversion based on her retention, *i.e.*, her

1  continued possession,[2] of the stolen goods.  There is no meaningful distinction between the crime in
2  *Fleetwood* (possessing with intent to convert) and the crime alleged here (embezzling or converting
3  by virtue of retaining, misusing, or abusing the property).  Therefore, her continued retention,
4  misuse, and abuse is properly viewed as a continuing offense.
5      The cases cited by the defendant are inapposite.  In *Toussie*, the Supreme Court
6  acknowledged that the statute requiring men to register for the draft "admittedly might be construed
7  as the Government urges," *i.e.*, as a continuing offense, and the Court declined to find a continuing
8  offense in large part due to the specific "history of the draft laws."  397 U.S. at 116.  In particular,
9  under the draft laws, "registration was thought of as a single, instantaneous act to be performed at a
10 given time, and failure to register at that time was a completed criminal offense." *Id.* at 117.  Under
11 the law, Toussie "was allowed a five-day period in which to fulfill the duty [to register], but when he
12 did not do so he then and there committed the crime of failing to register." *Id.* at 119.  Here, by
13 contrast, Section 666 imposes no time limitations on a defendant's criminal retention or
14 misapplication of a government organization's funds.  As the *Smith* case shows, a violation of
15 Section 666 may, depending on the facts of the case, constitute a continuing offense if the defendant
16 continues to retain or misapply the property of the government organization.  Here, Ms. Donehue's
17 flagrant and illicit retention and misuse of the automobile that she purchased with Northridge funds
18 constitutes a continuing offense.
19     Although *United States v. Pease*, 2008 WL 808683 (D. Ariz.), held, relying on *United States*
20 *v. Beard*, 713 F. Supp. 285, 291 (S.D. Ind. 1989), that a conversion offense is completed "upon the
21 initial interference with the owner's interest," neither case considered the definition of conversion
22 that includes retention of property, as explained above.  Neither *Pease* nor *Beard* considered
23 whether embezzlement or misapplication constituted continuing offenses.
24     Even assuming *arguendo* that a statute of limitations analysis were proper here (which it is
25 not) and that the crime is completed when property is first illicitly "retained" or "misapplied," the

---

[2] Merriam-Webster's Dictionary defines "retain" as "to continue to have in one's possession or power" or "to keep, control, or experience as one's own."

RESPONSE TO MOTION TO DISMISS
CR 07-0380 SI                               7

1 government's second superseding indictment still passes muster. It certainly appears that –
2 regardless of her intent at the time she took Northridge's funds and purchased the automobile – Ms.
3 Donehue knowingly "retained" the automobile at some point following the February 8, 2006 Board
4 Meeting at which she was unequivocally advised that she had purchased property with the
5 Northridge's funds. However, Ms. Donehue subsequently advised the Northridge Board members
6 that she was retaining the automobile "on advice of counsel." The government has requested that
7 the defendant provide further information about this potential defense, but has not received any
8 answer. It may well turn out that Ms. Donehue never consulted an attorney at that time. Even if she
9 did consult an attorney, and even if it could be argued that it was reasonable for Ms. Donehue to
10 retain the car while she consulted the attorney, at some undetermined point any reasonable attorney
11 would have advised Ms. Donehue that the automobile did not lawfully belong to her and could not
12 lawfully be retained and used for her personal benefit. At this juncture, though, due to the lack of a
13 response from the defendant about the details of any purported advice of counsel defense, it is
14 impossible for the government to determine with certainty at what precise point Ms. Donehue
15 became aware that her retention and continued use of the property was illegal. Therefore, the
16 indictment must stand.

### B.   The Second Superseding Indictment Is Not Duplicitous and Does Not Criminalize Lawful Conduct.

19    The defendant also claims that the indictment is duplicitous. That claim is entirely meritless.
20 Under Federal Rule of Criminal Procedure 7(c)(1), "[i]t may be alleged in a single count that ... the
21 defendant committed [the offense] by one or more specified means." "[A] jury may convict on a
22 finding of any of the elements of a disjunctively defined offense, despite the grand jury's choice of
23 conjunctive language in the indictment." *United States v. Bettencourt*, 614 F.2d 214, 219 (9th Cir.
24 1980). In addition, the Supreme Court has held that jurors are not constitutionally required to
25 unanimously agree on alternative theories of criminal liability. *Schad v. Arizona*, 501 U.S. 624, 629
26 (1991) (no unanimity requirement for alternative theories of premeditated and felony murder).
27 Indeed, "'different jurors may be persuaded by different pieces of evidence, even when they agree
28 upon the bottom line. Plainly there is no requirement that the jury reach agreement on the

RESPONSE TO MOTION TO DISMISS
CR 07-0380 SI                         8

1   preliminary factual issues which underlie the verdict.'" *Id.* (quoting *McCoy v. North Carolina*, 494
2   U.S. 433, 449 (1990) (Blackmun, J., concurring)).  The Supreme Court has also noted that "[t]he
3   general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the
4   conjunctive ... the verdict stands if the evidence is sufficient with respect to any one of the acts
5   charged." *Turner v. United States*, 396 U.S. 398, 420 (1970).  Not surprisingly, then, a very high
6   proportion of indictments returned by the grand jury in this District conjunctively allege multiple
7   theories of conviction.

8   "It is important to distinguish ... a statute creating several offenses from one ... which
9   enumerates several ways of committing the same offense." *Gerberding v. United States*, 471 F.2d
10  55, 59 (8th Cir. 1973) (rejecting duplicity challenge where indictment alleged that defendant
11  assaulted and put in jeopardy the lives of two persons).  The Ninth Circuit has expressly rejected
12  defendant's theory, even in cases where the acts that were alleged in the conjunctive would require a
13  finding of substantially different fact patterns by the jury in order to convict.  *See, e.g.*, *United States*
14  *v. Abascal*, 564 F.2d 821, 832 (9th Cir. 1977) (holding, in the context of an indictment alleging that
15  defendants conspired to "import, distribute, and possess with intent to distribute" drugs, that "[t]he
16  government may charge in the conjunctive form that which the statutes denounce disjunctively, and
17  evidence supporting any one of the charges will support a guilty verdict").  Indeed, the Ninth Circuit
18  has specifically rejected defendant's argument in a case involving Section 641, which is an analog to
19  Section 666.  *See McGriff v. United States*, 408 F.2d 333, 334 (9th Cir. 1969) (indictment charging
20  that defendant did "receive, conceal and retain" stolen goods and property in violation of 18 U.S.C.
21  § 641 was not duplicitous because "'[i]t is ... proper to charge conjunctively the elements of a crime
22  which is denounced disjunctively in the statute, and a finding of any one of the said elements will
23  support a verdict of guilt.'").  The sole case cited by the defendant, *United States v. Aguilar*, 756
24  F.2d 1418 (9th Cir. 1985), is inapposite because, unlike with 18 U.S.C. § 666 (or, by analogy, 18
25  U.S.C. § 641), the fact that 18 U.S.C. § 912 "states two offenses is well established."  756 F.2d at
26  1420 n.1.

27  Ms. Donehue attempts to bolster her meritless argument by characterizing the alleged crime
28  as "two distinct courses of action," and by asserting that there is a risk she will be punished for non-

RESPONSE TO MOTION TO DISMISS
CR 07-0380 SI                                            9

1  criminal conduct, Motion at 7, but those characterizations are completely inaccurate.  Ms.
2  Donehue's alleged violation of Section 666, regardless of the theory of conviction, constitutes one
3  unified scheme to take and misuse property belonging to the Northridge.  As explained in detail
4  above, the continued retention of the automobile is but one aspect of a violation of Section 666
5  under the embezzlement, conversion, or misapplication theories.  Each alleged theory of conviction
6  relies on the jury's evaluation of Ms. Donehue's entire course of conduct, including her intention
7  and actions from January 20, 2006 through February 6, 2006.  As also explained above, the present
8  uncertainty about the scope of Ms. Donehue's "advice of counsel" defense, if any, requires that the
9  jury evaluate the entire time period alleged in the Indictment to determine whether any of the
10 theories of conviction are satisifed beyond a reasonable doubt.  The most appropriate way to address
11 this issue is with carefully crafted jury instructions explaining each theory of conviction and with a
12 clear unanimity instruction.  *See, e.g.*, *United States v. Phillips*, 869 F.2d 1361, 1366 (10th Cir. 1988)
13 ("[I]t is assumed that a general instruction on the requirement of unanimity suffices to instruct the
14 jury that they must be unanimous on whatever specifications they find to be the predicate of the
15 guilty verdict.").

### III.  CONCLUSION

For the reasons explained herein, the government respectfully requests that the defendant's motion to dismiss the second superseding indictment be denied.

DATED: April 18, 2008                           Respectfully submitted,

                                                JOSEPH P. RUSSONIELLO
                                                United States Attorney


                                                _____/s/_____
                                                ERIKA R. FRICK
                                                Assistant United States Attorney

RESPONSE TO MOTION TO DISMISS
CR 07-0380 SI                                   10